DAVIS et al. v. PARKS et al.

(Court of Civil Appeals of Texas. Dallas. May 10, 1913. Rehearing Denied May 31, 1913.)

1. APPEAL AND ERROR (§ 301*)—MOTION FOR NEW TRIAL—NECESSITY.
     The overruling of a general demurrer going to the foundation of the action, if error, is fundamental and need not be assigned as error in the motion for a new trial in order to be reviewed.
     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. § 301.*]

2. APPEAL AND ERROR (§ 301*)—MOTION FOR NEW TRIAL—SPECIFICATION OF ERROR—NECESSITY.
     In view of the statute, any ruling which appears of record, such as the overruling of special demurrers to the petition, may be considered on appeal, though not assigned as error in a motion for a new trial pursuant to Court of Civil Appeals rules; rule 24 (142 S. W. xii) requiring that all grounds of error relied on be specified in the motion for new trial to be considered on appeal.
     [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. § 301.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 22*)—ORGANIZATION—VALIDITY.
     Const. amend. 1909, § 3a, provides that every school district heretofore formed, whether the territory embraced within its boundaries lies wholly within a single county or partly in two or more counties, is hereby declared to be "and from its formation to have been a valid and lawful district, and that all bonds heretofore issued by such districts, which have been approved and registered, are declared to have been issued in conformity with the Constitution and laws and binding upon the district." Held, that the constitutional amendment validated districts from their formation which were invalid because of want of constitutional authority to create them, though they were subsequently subdivided into other districts, and the fact that the district had been adjudged invalid by the Supreme Court before the enactment of the amendment would not prevent it from being validated by the amendment.
     [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 41; Dec. Dig. § 22.*]

4. SCHOOLS AND SCHOOL DISTRICTS (§ 32*)—CHANGES IN DISTRICT.
     An independent school district is not exempted from change by the Legislature.
     [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 52–54; Dec. Dig. § 32.*]

5. SCHOOLS AND SCHOOL DISTRICTS (§ 32*)—CHANGE OF BOUNDARIES.
     Where there was no law authorizing the change of boundaries of an independent district, the fact that the president of the school board of a district was notified and heard in proceedings to detach a part of the district and place it in the district of another county would not validate the change; it being invalid for want of authority.
     [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 52–54; Dec. Dig. § 32.*]

6. SCHOOLS AND SCHOOL DISTRICTS (§ 24*)—ORGANIZATION OF DISTRICT — COLLATERAL ATTACK.
     If the organization of an independent school district was not wholly invalid, it could be attacked for irregularities in its organization only in a direct proceeding brought for that purpose and not in a collateral proceeding.
     [Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 42, 45, 47–49; Dec. Dig. § 24.*]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by J. W. Parks and others against Jeff Davis and others. From a decree for plaintiffs, defendants appeal. Reversed, and decree rendered for appellants.

Collins, Cummings & Shurtleff, of Hillsboro, for appellants. R. S. Neblett and R. R. Owen, both of Corsicana, for appellees.

TALBOT, J. This suit was brought by the appellees to enjoin the appellants, who are trustees of the Mertens independent school district, from issuing bonds and levying taxes for school purposes in said district. A general and several special demurrers, urged by defendants to plaintiffs' petition, were by the trial court overruled, and by appropriate assignments of error these rulings are presented for review. The petition alleges that

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the Mertens independent school district embraces within its limits territory lying in Hill, Ellis, and Navarro counties, and that each of the plaintiffs own land situated in said district subject to taxation for state, county, and local school purposes; that, unless defendants, who were acting, or purporting to act, as the trustees and school board for the said Mertens independent school district, were enjoined and restrained, they would attempt to levy and collect a tax upon the property of plaintiffs situated in said district, and would issue a bond and bonds in the name and under the guise of the law in the sum of $12,500 and burden the property of the plaintiffs to pay said bonds, would fix a tax as a lien and charge upon their said property for the period of 40 years and force plaintiffs annually to pay taxes for the liquidation of the principal and interest on said bonds; that defendants have no authority, right, or power to levy and collect such tax or to issue such bonds for the reason that said district has never been incorporated and defendants are not legal trustees; "that on March 18, 1905, the village of Mertens had not been incorporated for municipal purposes, but on said date, to wit, March 18, 1905, an election was held in Mertens for the so-called Mertens independent district to determine whether Mertens, with the territory surrounding said village of Mertens and constituting the so-called Mertens independent school district, should be incorporated for school purposes only; that, in said election for the incorporation of the Mertens district for school purposes only, there were cast 'for incorporation' 52 votes, and 'against incorporation' 34 votes; that in said election many persons voting for incorporation of said district voted illegally and without any right or authority; that many of said persons voting for incorporation lived in Ellis and Navarro counties and went into Hill county and voted illegally in Hill county in said incorporation election; that said election for incorporation was null and void, because there was never any order issued by the county judge or commissioners' court of either Ellis or Navarro counties for such election; that no polling places were provided in Navarro and Ellis counties at which the voters residing in these respective portions of the district could lawfully cast their ballot in the counties of their residence, and that the only polling place provided was at Mertens in Hill county at which those voters in the district residing in Navarro and Ellis counties could not legally vote; that, after the votes illegally cast for incorporation as above alleged are deducted from those counted for incorporation, there will remain considerably less than the requisite number of votes for incorporation to carry the election 'for incorporation'; * * * that said null, illegal, and void election for incorporation of Mertens for school purposes only is the only authority for the acts of the defendants as

the trustees of Mertens independent school district, and is the only authority they have to act as the alleged trustees of such district."

Plaintiffs further allege "that the validity and legality of the so-called Mertens independent school district, formed and incorporated as hereinbefore shown, was called in question by a suit filed in the district court of Navarro county, Tex., on July 1, 1906, entitled J. W. Parks et al. v. R. C. West et al., No. 6,839, on the docket of said court, and said suit was tried in said district court and was appealed to the Court of Civil Appeals and the Supreme Court of Texas, which last court held that said Mertens independent school district was illegally formed and was invalid; * * * that by the said mandate of the Supreme Court, which is now the judgment of this court, binding upon defendants, who are the successors of the defendants in the cause of Parks v. West, above mentioned, said defendants were perpetually enjoined and restrained from collecting, or attempting to collect, a tax in the Mertens independent school district; that the matter of the validity and legality of the Mertens independent school district has already been judicially determined and ascertained and the determination by the Supreme Court that said district was illegally formed and was invalid is now a matter which is concluded by the judgment of the Supreme Court, as above shown; and plaintiffs say that defendants are now acting in violation of the judgment of the district court of Navarro county and of the Supreme Court of Texas in that they, acting as the board of trustees for the so-called Mertens independent school district, did on March 5, 1912, order an election to be held in such district on April 8, 1912, for the purpose of voting on said district bonds in the sum of $12,500 and to vote a tax on said district for the purpose of paying said bonds at maturity, said bonds due and payable 40 years from date; and they are arranging to hold, and intend to hold, on said date said election. * * * Plaintiffs further allege that on March 5, 1912, defendants, purporting and claiming to act as the school board for Mertens independent school district, made and entered an order calling for a bond election in said district for the purpose of determining whether or not said district would vote upon itself bonds to the extent of $12,500 due and payable 40 years from date, and to levy and to collect annually a tax on the property in said district to pay said bonds at maturity and all interest thereon, said bonds to bear 5 per cent. interest per annum payable annually; that in the order for said election no limit is placed upon said trustees or their successors as to rate at which such taxes shall be levied and collected, and plaintiffs say that said order is null and void because of its indefiniteness or uncertainty in this respect, and they say that defendants may

and will levy said taxes at a rate much greater than the law permits and allows; that said order for the bond election is null and void in that it does not describe with any certainty and particularity the territory to be included in such district but is general, indefinite, and uncertain."

It is further alleged "that, as to the plaintiffs and the residents of the Mertens district who reside in Navarro county, said defendants have no right, jurisdiction, or authority, or power to levy the said proposed tax on their property or to burden the same with bonds as hereinbefore stated, for that during February and March, 1906, the commissioners' court of Navarro county, proposing to act, and having the power to act, in the premises, upon the petition of plaintiffs and others residing in the Navarro county portion of said Mertens independent school district, placed the Navarro county portion of said Mertens district in and made such territory a part of the Park Goodman school district No. 84, and eliminated and excluded such territory from the Mertens district; that due notice was given to the trustees of the Mertens independent school district of this proposed action of the commissioners' court of Navarro county, and said trustees were represented and appeared before the commissioners' court in the proceedings to detach such territory from the Mertens district and attach it to the Park Goodman district No. 84 in Navarro county, Tex., and plaintiffs say that said defendants are wholly without authority to act as to the people living in, and the territory of, said district in Navarro county; that the Ellis county portion of the Mertens district has by the commissioners' court of Ellis county, in a proceeding in which the trustees of Mertens district were represented and heard, been detached from the Mertens district and has been annexed and added to the Shady Grove district in Ellis county and afterwards added to Milford school district in Ellis county, and plaintiffs say that defendants are wholly without authority and power to act as to the people and territory of said Mertens district being and lying in Ellis county; that a portion of the territory of said Mertens district has by the concurrence of Richland school district and the trustees of Mertens district been annexed to Richland school district in Hill county."

Plaintiffs further allege "that after the decision and judgment of the Supreme Court of Texas in the case of J. W. Parks et al. v. R. C. West et al., above referred to, on the 17th day of June, 1908, the several boards of school trustees for the Mertens school district have voluntarily abandoned and relinquished any claim or right said Mertens district ever had over the territory of said district lying and being in Navarro county, and all of said school boards elected since the decision in said cause above mentioned have agreed and consented that the Navarro county territory in such Mertens school district could be incorporated into school districts in Navarro county, and that the Ellis county portion of the Mertens district could be incorporated into school districts in Ellis county, and said boards of trustees for the Mertens district have waived every right to claim such portions of said district to belong to and be a part of said district at Mertens, and plaintiffs say that said trustees, defendants herein, are estopped and precluded from now setting up any claim to said portions of the old Mertens district. Plaintiffs further allege that the defendants have ordered an election for the Mertens independent school district to be held on April 8, 1912, for the purpose of issuing bonds in the sum of $12,500 and levying taxes to pay the same, with interest thereon; that plaintiffs are informed and believe that, while the Navarro and Ellis county portions of the Mertens district in which plaintiffs live is no part of the Mertens district now, defendants assert that such territory still is a part of the Mertens independent school district and assert further that it is their purpose to vote said bonds and taxes on the Mertens district to include the Navarro and Ellis county territory; that unless defendants are restrained and enjoined and do proceed, as they threaten to do and will do, to levy such special tax upon the real property aforesaid of the plaintiffs and issue the said bonds so voted upon, such acts will result in great and irreparable injury to plaintiffs and each of them, for which they have no adequate remedy at law, wherefore plaintiffs pray that on final hearing defendants and each of them be perpetually enjoined and restrained from holding said bond election, and declaring the result of same, from levying, or attempting to levy, the tax hereinbefore described, from collecting, or attempting to collect, said tax, and from issuing, or attempting to issue, sign or circulate, sell or dispose of the bond or bonds hereinbefore described; that upon final hearing the so-called Mertens independent school district be declared invalid and illegal; that upon final hearing upon proof of the facts hereinbefore stated the defendants and their successors be perpetually enjoined from levying, or attempting to levy, such tax, from collecting, or attempting to collect, said tax, and from issuing, or attempting to issue, float, sell, sign, or dispose of said bonds, and plaintiffs pray for all costs of suit and for all other and further relief, general and special, legal and equitable, to which from the premises they may be entitled."

The assignments of error, with one exception, complain solely of the court's action in overruling defendants' general and special demurrers to the petition of plaintiffs, and upon the correctness of these rulings depends, in our judgment, the right of plaintiffs to maintain this suit and secure the relief sought. Appellees, however, object to a con-

sideration of appellants' assignments of error because the record fails to show that appellants, as required by amended rule 24 promulgated by the Supreme Court for the government of the Courts of Civil Appeals (142 S. W. xii), filed in the court below a motion for a new trial calling that court's attention to the errors here assigned. That rule plainly makes it incumbent upon the party cast in the suit to file in the trial court a motion for a new trial distinctly specifying therein all grounds of error relied on in order to avail himself of such errors on appeal, unless the same are fundamental; but in the recent case of Railway Company v. Beasley (Sup.) 155 S. W. 183, the Supreme Court has held that the giving or refusing of charges, and, in effect, any other ruling which appears of record, need not, because of the statute on the subject and its construction in former decisions of that court, be included in a motion for a rehearing in the trial court. However, the objections to a consideration of the assignments in this case are not well taken, for the reason that, if the court erred in its rulings on defendants' demurrers such errors, in our judgment, are fundamental, or, according to the decision in the case of Railway Company v. Beasley, supra, are not of such character as must be embraced in a motion for a new trial in the court below in order to be made available as a ground for reversal on appeal.

[1] The exceptions of the defendants to the plaintiffs' petition we regard as nothing more in effect than a general demurrer, going to the very foundation of the action, and it is well settled in this state that the overruling of such demurrer, if error, is fundamental. Hall v. Johnson, 40 S. W. 47; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518.

[2] But if the matters excepted to in defendant's special demurrers cannot be reached by a general demurrer, still appellants' assignments challenging the correctness of the court's rulings on these demurrers, although such ruling may not constitute fundamental error, is entitled to consideration under the decision in Railway Company v. Beasley, supra. The question then is, Did the trial court err in overruling defendants' general demurrer and special exceptions or either of them?

The special demurrers except: (1) To that part of the petition which alleges that the Mertens independent school district was not properly and legally organized, upon the ground that the same involves a collateral attack upon the organization of said district; (2) to that portion wherein it is alleged that the school district in question has been held to be invalid by the district court of Navarro county, Tex., and the Supreme Court of the state of Texas, in the case of Parks v. West, for the reason that since said judgment and decision of said courts the people of the state of Texas have adopted an amendment to the Constitution of the state of Texas declaring the said school district to be valid, and to have been valid since its organization; (3) to that portion wherein it is alleged that school districts have been organized out of the territory constituting the Mertens independent school district in the various counties composing said district for the reason that, after the adoption of the constitutional amendment declaring the said Mertens independent school district to have been valid from the time of its formation, it was impossible for legal school districts to have been formed out of the territory included in said Mertens independent school district; (4) to that part which alleges that defendants are without authority to act as school trustees of the Mertens independent school district, for the reason that the authority of the defendants cannot be questioned in a proceeding of this kind, but could only be questioned in a quo warranto proceeding or a suit by a person having an interest in the suit and acting under and by the authority of the state of Texas; (5) to that part which alleges that the order for the bond election is void because the boundaries are not set out with certainty, because the same is a collateral attack upon the organization of said district; (6) to that part which alleges that the trustees of the Mertens independent school district abandoned territory to districts afterwards formed and consented to the formation of said new districts, and are therefore estopped to claim a right to act as trustees of said Mertens independent school district, because the existence of said district could not be affected in any manner by such action.

[3] We are of the opinion the court erred in overruling the demurrers. Admitting, as must be done for the purposes of the demurrers, that all the facts alleged are true, yet, under the statute, the organic law as recently amended, and the decision in Gillespie v. Lightfoot, 103 Tex. 359, 127 S. W. 799, they furnish no cause of action for the relief asked. Since the school district in question was held in Parks v. West, 102 Tex. 11, 111 S. W. 726, to be forbidden by the Constitution, an amendment to that instrument has been adopted, which reads as follows: Sec. 3a. "Every school district heretofore formed, whether formed under the general law or by special act, and whether the territory embraced within its boundaries lies wholly within a single county or partly in two or more counties, is hereby declared to be, and from its formation to have been, a valid and lawful district. All bonds heretofore issued by any such districts which have been approved by the Attorney General and registered by the comptroller are hereby declared to be, and at the time of their issuance to have been, issued in conformity with the Constitution and laws of this state, and any and all such bonds are hereby in all things validated and declared to be valid and binding obligations

upon the district or districts issuing the same. Each such district is hereby authorized to, and shall, annually levy and collect an ad valorem tax sufficient * * * to redeem the same at maturity, not to exceed such a rate as may be provided by law under other provisions of this Constitution. And all trustees heretofore elected in districts made up from more than one county are hereby declared to have been duly elected, and shall be and are hereby named as trustees of their respective districts, with power to levy the taxes herein authorized until their successor shall be duly elected and qualified as is or may be provided by law." The adoption of this amendment had the effect to cure the infirmity in districts of the character of the Mertens district, due to the want of constitutional authority to form them, and validates such district from their original formation, even though they may have been irregularly created and subsequently subdivided into other districts.

This, in substance, is the holding in Gillespie v. Lightfoot, supra, as we understand that decision. In that case it is said: "The school districts referred to in the first clause (of the amendment) are declared to be, and from their formation to have been, valid and lawful districts. Whether they were in truth valid or not, under the law as it existed before, they are to be treated now as if they always were and yet are valid. By the express language of the people, the law which made them formerly invalid, according to our decision in Parks v. West, is changed so that they are henceforth to be regarded as continuously lawful from their formation." In Gillespie v. Lightfoot, the Supreme Court was dealing with an independent school district named the "Mart high school," which, like the Mertens district, embraced originally territory from three contiguous counties, but which, after the decision in Parks v. West, and before the amendment to the Constitution above quoted, had been dismembered and practically destroyed by the town of Mart assuming control of its own schools and the action of the respective commissioners' courts of Falls and Limestone counties in withdrawing and distributing the territory of those counties, which formed a part of the "Mart high school" district, into common school districts. In discussing the authority of the commissioners' court to make such a distribution and its effect upon the Mart high school district, the Supreme Court, speaking through Mr. Justice Williams, after declaring that both the independent district and the common school district could not be regarded as existing, says, in effect, that the rule is in such case that the independent districts are to be considered as having always had a lawful existence; that, since they were formed under the general law or by special act, their legality is established by the very language of the first clause of the amendment;

that "while others, such as those subsequently formed in the same territory, are also within the words "heretofore formed," it cannot be said of them, consistently with the assumption of the original and continued validity of those first formed which the amendment requires us to make, that they were "formed under the general law or by special act," for the reason that no such authority over valid independent school districts as that exercised by the authorities of the town and counties over the Mart high school district was given by law to those bodies. He further says: "Viewed as valid districts, those of the kind to which Mart high school belonged were quasi corporations, the officers of which exercised control over all the territory included in them for the purpose of supporting and conducting the public schools therein, and the school laws regulating the formation of independent school districts seem to exclude the existence of any such power over the territory of one lawfully constituted as the commissioners' courts of Falls and Limestone counties and the authorities of the town of Mart exercised over the district in question. Such districts are established in order that the territory in them may be utilized for the maintenance of their schools, and, for such purposes, they are put in the control of trustees chosen by their own people. They become legal entities, with power to levy taxes, incur obligations, maintain and conduct schools, for which purposes the property situated in them is liable to be taxed. The power of commissioners' courts to change their boundaries, given by section 52 of the act of 1905 (page 277) is subject to limitations which show that it was not intended thereby to authorize action such as that taken by the courts of Falls and Limestone counties with respect to the territory of lawfully constituted independent school districts. That action evidently was taken because of the decision of this court holding such districts as the Mart high school to be invalid and because it then had no legal existence as an obstacle to the course taken, and not as the exercise of the power given by the statute referred to merely to change boundaries. That the town of Mart would not have had power to take itself out of a legal independent district in which it had been lawfully included is evident from the provisions of the act of 1905 (sections 149, 151, pp. 302–303). We think, therefore, it may safely be assumed that, without legislative authority existing beyond any in the then existing laws, a lawfully constituted independent school district could not have been disestablished by such action as was taken by the authorities of the town and counties."

By the foregoing construction of the constitutional amendment, it is settled that the Mertens independent school district is to be treated as valid from the beginning, and hav-

ing become a legal entity, with power and authority to incur obligations and levy taxes upon the property situated in it for the purpose of maintaining and conducting schools therein, could not be disestablished by the action of the commissioners' courts of Hill, Ellis, and Navarro counties in withdrawing the territory of their respective counties from said district and consolidating the same with other school districts or creating other districts out of it, without "legislative authority extending beyond any in the then existing laws."

[4] That independent school districts, such as the Mertens district, are not exempted from change by the Legislature or under its authority, is affirmed by the decision in Gillespie v. Lightfoot, but that no such authority for the change attempted to be made in the Mertens district existed at the time of such attempt is also affirmed by the decision mentioned.

[5] There being no law authorizing the change attempted to be made, the fact that the president of the "Mertens district school board" was notified and heard in the proceedings to detach the Navarro county portion of the Mertens district and place it in a school district in that county becomes immaterial. That portion of the opinion in Gillespie v. Lightfoot declaring that the Mart high school district "could not have been disestablished by such action as was taken by the authorities of the town and counties" does not appear to have been based upon a failure to give notice of such proposed action. Indeed, it does not appear from the report of the case that such notice was not given. Nor do we think the instant case is materially different from Gillespie v. Lightfoot because its original creation was adjudged invalid for want of constitutional authority in the case of Parks v. West. We do not believe because the status of the Mertens independent school district had been judicially determined before the constitutional amendment, declaring all such districts theretofore formed to be valid from their formation, took effect interposed any obstacle to its validation by such amendment. Appellees cite no authority against this view, and it seems to be sustained by Hammond v. Clark, 136 Ga. 313, 71 S. E. 479, 38 L. R. A. (N. S.) 77. As authority for the proposition that the action of the commissioners' courts of Navarro and Ellis counties in detaching that portion of the territory situated in their respective counties from the Mertens district was authorized by law, and that created out of the same could not be invalidated by the adoption of the constitutional amendment, appellees cite the cases of Tomlinson v. Hunnicutt, 147 S. W. 612, and State ex rel. Johnson v. Dudley, 153 S. W. 1156. These cases sustain the proposition in the case of common school districts,

but as applied to independent school districts do not purport to be and are not authority sustaining the proposition. If so, then they are, in our opinion, in conflict with the views expressed by the Supreme Court in Gillespie v. Lightfoot and at variance with the views of this court.

Touching the allegations of the petition, excepted to by appellants, to the effect that the laws regulating the creation of independent school districts were not followed in the organization of the Mertens district, it may be said there was a substantial, if not a strict, compliance with the provisions of the law on the subject; that, if for any reason urged the district was formed without a compliance with the laws prescribing the method and manner of organizing such districts, its creation was validated and made legal by the amendment to the Constitution adopted in 1909.

[6] Besides, such districts having been declared to be and from their formation to have been valid and lawful, by said constitutional amendment their corporate existence and the rights of the trustees to exercise their functions, etc., could not thereafter be questioned in a collateral proceeding on account of a failure to strictly comply with the provisions of the law prescribing procedure for their organization. Their invalidity for such reason (that is, irregularities in their creation) could only be shown in a direct proceeding instituted for that purpose. El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; White v. Quanah, 27 S. W. 839; Coffman v. Goree Independent School District, 141 S. W. 132; Wilson v. Brown, 145 S. W. 639.

The eighth and last assignment of error need not be considered. From what has been said it follows that, in the opinion of this court, plaintiffs' petition showed upon its face that they were not entitled to the injunction and relief therein prayed for, and therefore that defendants' demurrers thereto should have been sustained; and the cause having been tried on its merits, and having been fully developed by the pleadings and evidence, we will proceed to render such judgment in this court as should have been rendered in the district court.

It is therefore ordered that the judgment of the district court be reversed and rendered in favor of appellants, dissolving the injunction, and dismissing the cause.